UNITED STATES of America,
Plaintiff–Appellee,

v.

Silvestre M. RIVERA, Defendant–
Appellant.

No. 92–10063.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 8, 1992.*

Decided June 24, 1993.

John R. Hannah, Asst. Federal Public De-
fender, Phoenix, AZ, for defendant-appellant.

W. Allen Stooks, Asst. U.S. Atty., Phoenix,
AZ, for plaintiff-appellee.

Before: POOLE, FERNANDEZ, and T.G.
NELSON, Circuit Judges.

* The panel unanimously finds this case suitable for
decision without oral argument. Fed.R.App.P.

34(a) and Ninth Circuit Rule 34–4.

T.G. NELSON, Circuit Judge:

## OVERVIEW

The defendant in this case, Silvestre Mayorquin Rivera ("Rivera"), entered into a plea agreement in which he pled guilty to four counts of bank robbery in violation of 18 U.S.C. § 2113(a). The district court sentenced Rivera to 168 months in prison followed by thirty-six months of supervised release. Rivera timely appeals that sentence on three separate grounds, arguing that the district court erred in: (1) sentencing him as a career offender; (2) failing to make a downward departure from the Sentencing Guidelines; and (3) sentencing him to fourteen years in prison when 18 U.S.C. § 3581 only authorizes a maximum of twelve years for a Class C felony.

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.

## BACKGROUND

Rivera committed several bank robberies in Arizona and California between September, 1990, and March, 1991, when he was finally apprehended with the aid of a tracking device. In April, 1991, he was indicted by a federal grand jury in Arizona for one count of bank robbery. In August, 1991, a federal grand jury in the Central District of California indicted Rivera for three counts of bank robbery. Subsequently, the California proceedings were transferred to the Arizona District Court pursuant to Fed.R.Crim.P. 20. On September 9, 1991, an information was filed against Rivera in the Arizona District Court charging him with an additional count of bank robbery. All bank robbery charges alleged violations of 18 U.S.C. § 2113(a).

In exchange for Rivera's guilty plea to four counts of bank robbery, the Government dropped the other bank robbery charge. The district court calculated Rivera's sentence pursuant to the Sentencing Guidelines. It determined that Rivera had an offense level of thirty and a criminal history category of six. The district court then sentenced Rivera as a career offender pursuant to U.S.S.G. § 4B1.1, basing its determination upon a prior robbery conviction and a prior state conviction for possession of narcotics for sale.[1] The Sentencing Table specified a range of 168 to 210 months imprisonment for the above categories and the district court sentenced Rivera to the lower figure, 168 months.

During sentencing, the district court rejected Rivera's argument that 18 U.S.C. § 3581 authorizes a maximum sentence of twelve years and ruled 18 U.S.C. § 2113(a) was the governing statute, authorizing a twenty-year maximum penalty. The district court also refused to make a downward departure.

## DISCUSSION

### A. Career Offender Status

Rivera's appeal revolves around his prior state drug conviction. He contends that the Sentencing Commission ("Commission") exceeded its delegated authority by permitting prior state convictions to serve as predicate offenses for career offender status. He argues that because prior state convictions are not specifically enumerated in 28 U.S.C. § 994(h), the Commission did not respect the plain, unambiguous language of the statute when it included in the Sentencing Guidelines prior state convictions as the basis for career offender status.

■ We review *de novo* the district court's interpretation of the Sentencing Guidelines. *United States v. Blaize*, 959 F.2d 850, 851 (9th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992). In reviewing the Commission's interpretation of the underlying statute, we must determine whether the Sentencing Guideline is "sufficiently reasonable" in light of the congressional directive to the Commission. *United States v. Nelson*, 919 F.2d 1381, 1382

---

**1.** Rivera entered an *Alford* plea to the narcotics conviction. *North Carolina v. Alford*, 400 U.S. 25, 37–39, 91 S.Ct. 160, 167–168, 27 L.Ed.2d 162 (1970) (defendant may plead guilty without admitting commission of crime). However, the fact that Rivera entered an *Alford* plea goes to the weight of the evidence and not its admissibility.

(9th Cir.1990). Finally, we review the district court's factual findings during sentencing for clear error. *United States v. Chapnick*, 963 F.2d 224, 226 (9th Cir.1992).

A defendant is sentenced as a career offender if: (1) he or she is eighteen years old or older; (2) the instant conviction is either a crime of violence or a controlled substance offense; and (3) the defendant has two or more prior felony convictions, each of which is either a crime of violence or a controlled substance offense. 28 U.S.C. § 994(h); U.S.S.G. § 4B1.1 (Nov. 1, 1990). Only the third element involving prior felony convictions is at issue in this case.

■ Section 994(h)(2)(B) provides that controlled substance offenses are those "described in" certain *federal* statutes[2] which prohibit the manufacture, distribution, import, export, or possession of controlled substances. Pursuant to the Sentencing Guidelines a "'[p]rior felony conviction' means a prior adult federal or *state* conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 4B1.2, comment. (n. 3) (Nov.1990) (emphasis added). The Guidelines define a "controlled substance offense" as "an offense under a federal or *state* law prohibiting the manufacture, import, export, or distribution of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, or distribute." U.S.S.G. § 4B1.2(2) (Nov. 1, 1990) (emphasis added). Finally, § 994(h) mandates that the "guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants [satisfying the three elements outlined above]." 28 U.S.C. § 994(h).

Whether the Sentencing Guidelines are consistent with the congressional mandate in allowing prior state convictions to serve as the basis for career offender status is a matter of first impression in this Circuit. Our task here is not to interpret the enabling statute; rather, we must determine whether the Guidelines, in allowing prior state convictions to serve as the basis for career offender status, are "sufficiently reasonable" in light of the congressional directive to the Commission. *Nelson*, 919 F.2d at 1382. Section 994(h) of the statute is ambiguous. As the Government points out, if Congress had wanted to restrict the statute's reach to federal convictions, it could easily have said that predicate offenses are limited to federal law. It is equally true that Congress could have said predicate offenses are calculable whether they violate state or federal law. The question is whether a contrary interpretation of the statute is so clear that the Commission was not sufficiently reasonable in its interpretation of § 994(h).

The Third Circuit rejected a similar challenge to this provision of the Sentencing Guidelines. *United States v. Whyte*, 892 F.2d 1170 (3rd Cir.1989), *cert. denied*, 494 U.S. 1070, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990). In doing so, it said:

> We believe that the entire guideline is authorized, if not required, by section 994(h). The text of that statute, although not completely unambiguous, cuts against [the defendant's] position. *If Congress had wanted only convictions under particular federal statutes to serve as predicate offenses, it could have said so quite simply. Instead, Congress referred to "offenses described in"—not "convictions obtained under"—those statutes.*

*Id.* at 1174 (emphasis added). In *Whyte* the court reasoned that the statutory language suggests predicate offenses are not limited to federal offenses, but rather they include conduct that could have been charged federally. *Id.*

We find the position of the Third Circuit persuasive. In determining whether the Commission's interpretation is reasonable, we also find two additional facts convincing. First, when Congress adopted subsection (h) of § 994, it emphasized that "the guidelines development process can assure consistent and rational implementation of the Commit-

---

**2.** The specific statutes listed in § 994(h)(2)(B) include the following: 21 U.S.C. § 841, 21 U.S.C. §§ 952(a), 955, & 959, and 21 U.S.C. § 955a.

tee's view that substantial prison terms should be imposed on repeat violent offenders and repeat drug traffickers." S.Rep. No. 225, 98th Cong., 2d Sess. 175 (1984), *reprinted in* 1984 U.S.C.C.A.N 3182, 3358. In view of this directive, it was reasonable for the Commission to include prior state convictions as a basis for career offender status. Such an interpretation not only ensures consistent application of the career offender provision, but it imposes substantial prison terms upon repeat drug traffickers who violate either state or federal drug laws. The fact that a defendant has a prior *state* conviction should not exempt him from career offender status when a prior conviction for violating an analogous *federal* law would result in career offender status. Such an outcome would not provide consistent application of the statute, nor would it impose substantial prison terms upon repeat drug traffickers in accord with the congressional directive.

Second, we find instructive a congressional amendment to one of the drug offense statutes[3] specifically enumerated in § 994(h)(2)(B) which permits "the enhancement of maximum penalties for controlled substance offenses to include a prior *state* felony drug conviction within the definition of a prior felony conviction." *United States v. Sanchez–Lopez,* 879 F.2d 541, 560 (9th Cir. 1989) (citing S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.C.C.A.N. 3182, 3440–41) (emphasis added). This amendment suggests that the career offender provision focuses upon setting penalties based on the *conduct,* whether it violated federal or state law.

Section 994(h)(2)(B) provides that offenses "described in" the federal statutes listed in that subsection serve as predicates for career offender status. If Congress had intended only federal offenses to serve as predicates for career offender status, it could have done so by providing that only "convictions obtained under" the federal statutes would be the basis for career offender status. The fact that Congress used the words "described in" indicates the focus is not upon whether the predicate offense is federal or state; rather, the focus is upon the type of conduct involved. As we have previously stated, in the "context of the career offender provision, Congress specifically delineated the *types of individuals and conduct* which should be a part of the career offender provision." *Sanchez,* 879 F.2d at 560 (emphasis added) (rejecting defendant's argument that Guidelines involve unlawful sub-delegation of authority to the states because state as well as federal convictions trigger career offender status). In *Sanchez,* although we did not decide the precise issue presented here, we upheld the application of career offender status on the basis of two prior state drug convictions. *Id.*

The Commission's interpretation of § 994(h) to include prior state convictions is not unreasonable because the statute focuses upon the individual and the type of conduct involved. Such an interpretation ensures an application of the career offender provision consistent with the type of conduct Congress intended to penalize, as opposed to an application based upon whether the prior conviction violates a federal or state statute. As *Whyte* reasoned, the language of § 994(h) suggests that the predicate drug convictions need not be federal as long as they are for conduct that could have been charged federally. *Whyte,* 892 F.2d at 1174.

Because it is not at all clear that Congress intended to *exclude* state convictions from the definition of "prior felony conviction," we cannot say the Commission's interpretation is unreasonable. Therefore, we hold that the Commission's interpretation of § 994(h)(2)(B), allowing prior state convictions to serve as the basis for career offender status, is "sufficiently reasonable" in light of the congressional mandate. *Nelson,* 919 F.2d at 1382.

Finally, Rivera argues that the rule of lenity should apply in this case, thereby favoring a construction of the statute which yields the shorter sentence. It is true we have held that " 'ambiguities in criminal statutes must be resolved in favor of lenity.' " *United States v. Helmy,* 951 F.2d 988, 996

---

**3.** The statute amended was 21 U.S.C. § 841 prohibiting the manufacture, distribution, and possession of controlled substances.

(9th Cir.) (quoting *United States v. Batchelder*, 442 U.S. 114, 121, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979)), *cert. denied,* — U.S. ——, 112 S.Ct. 2287, 119 L.Ed.2d 211 (1992). However, 28 U.S.C. § 994 is not a criminal statute in the sense that it proscribes certain conduct. Section 994 is a part of the Act of Congress which established the Sentencing Commission and it directs the Commission to "promulgate and distribute" the Sentencing Guidelines. Thus, as in *Nelson,* we are asked to decide whether the Sentencing Commission's interpretation of its charge is "sufficiently reasonable": "In reviewing an agency's interpretation of a statute, the appellate court makes a narrow inquiry into whether the agency's construction is 'sufficiently reasonable.' The agency's interpretation need not be the only reasonable one." *Nelson,* at 1382 (internal citation omitted). We do not substitute our view of the statute for that of the Commission.

The rule of lenity also pertains to interpretations of the Sentencing Guidelines. *See id.* Our task in this case is to determine whether the Commission's interpretation of the career offender statute is sufficiently reasonable in light of the congressional directive. Because we have concluded that the Guideline is sufficiently reasonable, we need only apply the rule of lenity to the Guideline if § 4B1.2 is ambiguous. Section 4B1.2 is not ambiguous. It clearly defines "prior felony conviction" to include prior state convictions. U.S.S.G. § 4B1.2, comment. (n. 3). Consequently, application of the rule of lenity is not called for in this instance.

B. *Downward Departure*

■ Rivera claims that because the district court has discretion to depart downward from the career offender guideline when a defendant's criminal history category significantly overrepresents the seriousness of his criminal history, the district court erred in failing to consider the circumstances surrounding his prior convictions as the basis for a downward departure. However, we reject Rivera's argument because we lack jurisdiction to review a district court's discretionary refusal to downward depart from the Sentencing Guidelines. *United States v. Mo-*

*rales,* 898 F.2d 99 (9th Cir.1990) (dismissing the appeal because the district court's refusal to downward depart is not subject to appellate review).

Rivera relies upon *United States v. Dickey,* 924 F.2d 836, 839 (9th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991), in support of his position that we must remand his case for resentencing. In *Dickey* we held that if the district court's refusal to depart downward is a discretionary act, we have no jurisdiction to review that decision; but if, on the other hand, the district court finds as a matter of law that it has no authority to depart, we must review the decision *de novo. Dickey,* 924 F.2d at 839.

In *Dickey,* however, we remanded because it was not clear from the record whether the district court had merely refused to exercise its discretion, or whether the court had concluded as a matter of law that it could not depart downward: "Since we are unable to determine from the record whether the district court's ruling on this issue was an exercise of its discretion or a legal ruling, we must remand for clarification on this question." *Id. Dickey* is distinguishable from this case because here the record does reflect the district court's discretionary refusal to depart downward from the guidelines.

In a case similar to the present one, we held that the record indicated the district court's discretionary refusal to make a downward departure. *United States v. Williams,* 898 F.2d 1400, 1403 (9th Cir.1990). The district court judge in *Williams* had concluded: " 'I do not find that I have the authority [to depart] in this case, nor do I find facts which would lead me to believe I should depart.' " *Id.* We held that "[t]his latter finding constitutes a discretionary refusal to depart. It is sufficient to support the sentence, and we are without jurisdiction to review it." *Id.*

After reviewing the record in this case, we conclude that the district court did not rule as a matter of law that it had no authority to make a downward departure. *See Dickey,* 924 F.2d at 839; *see also Williams,* 898 F.2d at 1403. As in *Williams,* the district court in this case concluded that under the circumstances, it would not depart downward from the Sentencing Guidelines. In reaching this

conclusion, it exercised its discretionary authority. Therefore, we lack jurisdiction to review the district court's discretionary refusal to downward depart.

### C. *Maximum Sentence*

■ Rivera concedes that the career offender statute mandates "a term of imprisonment at or near the maximum term authorized." 28 U.S.C. § 994(h). He contends, though, that the maximum term is authorized by 18 U.S.C. § 3581 which sets the maximum term at twelve years for a Class C felony. Thus, he argues, because bank robbery is a Class C felony, the district court erred in sentencing him to 168 months (fourteen years) which is two years in excess of the twelve year maximum.

We review *de novo* the district court's sentence and interpretation of federal statutes. *United States v. Schiffbauer,* 956 F.2d 201, 202 (9th Cir.), *cert. denied,.* — U.S. ——, 113 S.Ct. 274, 121 L.Ed.2d 202 (1992). Our decision in *Schiffbauer* forecloses Rivera's argument. *Id.* at 202–203.

In *Schiffbauer* the defendant pled guilty to robbery in violation of § 2113(a) [4] and argued that § 3581(b) [5] limited his sentence to twelve years. We held that § 3559(b), [6] and not § 3581(b), applies when sentencing a defendant convicted of bank robbery under § 2113(a). *Id.* at 203. In reaching that conclusion, we relied upon an earlier decision in which we had held that the letter classification sentencing scheme in sections 3559(a) and 3581(b) did not apply to a first degree murder offense set forth in 18 U.S.C. § 1111 because the latter statute designated its own mandatory life sentence. *United States v. LaFleur,* 952 F.2d 1537 (9th Cir.), *amended on other grounds,* 971 F.2d 200 (1991), *cert. denied,* — U.S. ——, 113 S.Ct. 1292, 122 L.Ed.2d 683 (1993).

*Schiffbauer* stated that the penalties in § 3581(b) "apply only to offenses that are

assigned letter classifications in the statutes describing them." *Schiffbauer,* 956 F.2d at 203. Because Congress did not designate a letter classification in the robbery statute (§ 2113(a)), we reasoned that § 3581(b) does not apply to the bank robbery offense. *Id.* Therefore, § 3559(b) applies to statutes such as the bank robbery statute which include a maximum sentence within its terms: "Thus, the plain language of section 3559(b) states that all of the incidents of the letter grading system shall apply '*except that* the maximum term of imprisonment is the term authorized by the law *describing the offense.*'" *Id.* (emphasis in original).

In this case, Rivera was sentenced to fourteen years in prison, less than the maximum twenty-year term authorized by § 2113(a). Therefore, his sentence was consistent with both § 2113 and § 3559(b).

**AFFIRMED.**

POOLE, Circuit Judge, dissenting:

### I.

While Congress left the United States Sentencing Commission largely on its own to devise the Sentencing Guidelines, in certain areas it gave the Commission specific directives. One such directive deals with "career criminal offenders." It states:

> The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and—
>
> (1) has been convicted of a felony that is—
>
> (A) a crime of violence; or
>
> (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and

---

**4.** The bank robbery statute under which Rivera was convicted sets the maximum prison term at twenty years. 18 U.S.C. § 2113(a).

**5.** Section 3581(b) authorizes a maximum prison term of twelve years for Class C felonies. 18 U.S.C. § 3581(b).

**6.** Section 3559(b) provides that "[a]n offense classified under subsection (a) carries all the incidents assigned to the applicable letter designation, *except that the maximum term of imprisonment is the term authorized by the law describing the offense.*" 18 U.S.C. § 3559(b) (emphasis added).

1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and section 1 of the Act of September 15, 1980 (21 U.S.C. 955a); and

(2) has previously been convicted of two or more prior felonies, each of which is—

(A) a crime of violence; or

(B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and section 1 of the Act of September 15, 1980 (21 U.S.C. 955a).

28 U.S.C. § 994(h).

The language of subsection (2)(B) is quite specific. It classifies as predicate offenses prior violations of five enumerated federal narcotics statutes: "section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and section 1 of the Act of September 15, 1980 (21 U.S.C. 955a)." State narcotics offenses are not specified. Nor are some federal narcotics offenses.[1]

Despite the specificity of this directive, the Sentencing Commission adopted the following career offender provisions:

§ 4B1.1 *Career Offender*

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

\*　　\*　　\*　　\*　　\*　　\*

§ 4B1.2 *Definitions of Terms Used in Section 4B1.1*

\*　　\*　　\*　　\*　　\*　　\*

(2) The term "controlled substance offense" means an offense *under a federal or state law* prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance ... or the possession of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. §§ 4B1.1, 4B1.2(2) (emphasis added).

The Sentencing Guidelines thus make virtually *all* prior felony drug convictions, whether state or federal, count toward career offender sentencing. Because in so doing the Guidelines exceeded their statutory mandate, and because the appellant in this case received a career offender sentence based on a prior state drug conviction,[2] I respectfully dissent.

## II.

The majority believes that section 994(h) can be read broadly, to include unenumerated state and federal crimes. But a review of the text of the statute in context, its legislative history, and the case law, will show that the statute should be read to encompass only the offenses listed. In addition, because the government's proposed reading is at best very uncertain, the rule of lenity comes into play. That rule requires resolving any residual doubts in favor of a lenient reading of the statute. *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980).

## A.

The most decisive evidence concerning the scope of section 994(h) is the text of the statute itself. The specificity of section 994(h)(2)(B), especially when contrasted with

---

1. For example, an excluded federal offense is 21 U.S.C. § 953, prohibiting the exportation of controlled substances from the United States.

2. Rivera's career offender sentence took into account his 1984 state court conviction for posses-

sion of 3.2 grams of heroin. Without the state conviction, Rivera's sentence would have been 7½ to 9½ years. With the state conviction, Rivera received a career offender sentence of 14 years.

neighboring provisions, reveals an intent to encompass only the listed predicate offenses.

For example, compare 994(h)(2)(B)'s very specific enumeration of federal drug offenses with the very broad language immediately preceding it, defining the other type of predicate offense: "a crime of violence." 28 U.S.C. § 994(h)(2)(A). Had Congress meant to include *all* state and federal drug felonies, as it did with crimes of violence, it could have used a similarly broad phrase. Instead, Congress enumerated five specific federal statutes.

Or compare section 994(h)(2)(B) with the section immediately following, in which Congress mandates substantial prison terms for defendants with "a history of two or more prior *Federal, State, or local* felony convictions for offenses committed on different occasions." 28 U.S.C. 994(i) (emphasis added).[3] The fact that Congress referred to "Federal, State, or local" felony convictions in section 994(i), but did not similarly qualify section 994(h)(2)(B), strongly suggests that section 994(h)(2)(B) refers only to the offenses it names.

The government argues, however, and the majority today accepts, that section 994(h)(2)(B)'s use of the phrase "an offense described in" refers not just to the listed statutes, but to all offenses punishable under them. The Third Circuit took this view in *United States v. Whyte*, 892 F.2d 1170, 1174 (3rd Cir.1989), *cert. denied*, 494 U.S. 1070, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990), the only published decision directly addressing the issue. In *Whyte*, the court reasoned that if Congress had meant to refer only to violations of the listed statutes, it could have said "convictions obtained under" rather than "offenses described in" the statutes.

But there are difficulties with this approach. First, the observation that Congress could have phrased the statute differently cuts two ways. To be sure, Congress could easily have referred to "convictions obtained under" rather than "offenses described in"

the listed statutes; but it could with equal ease have referred to "*federal, state, or local* 'offenses described in [the listed statutes],'" as it did in section 994(i). Congress took neither course. And—but for the rule of lenity—it is difficult to say which side of this controversy should benefit from Congress's failure to turn a clearer phrase.

The second difficulty with the *Whyte* approach is that a very similar approach was disapproved for interpreting a statute much like section 994(h). Title 21 U.S.C. section 841 prohibits the manufacture, distribution, dispensation, or possession with intent to do one of those activities, of a controlled substance. Before its amendment in 1984, 21 U.S.C. section 841(b)(1)(A) provided a severe sentence enhancement (a maximum sentence of 30 rather than 15 years) for anyone who was convicted of violating section 841

> after one or more prior convictions of him for an offense *punishable under* this paragraph, or for a felony under any other ... law of the United States relating to narcotic drugs, marihuana, or depressant or stimulant substances....

21 U.S.C. § 841(b)(1)(A) (1981) (amended 1984) (emphasis added).

The phrase "punishable under this paragraph" is much like the phrase "an offense described in" used in section 994(h)(2)(B). Under *Whyte*, both would be read to refer to offenses which "could have been charged" under the given statutes. Past state convictions, as well as past federal ones, would result in enhanced sentencing.

But the courts held the section applicable only to past·convictions for the specified federal offenses. *See United States v. Johnson*, 506 F.2d 305, 307 (7th Cir.1974), *cert. denied*, 420 U.S. 1005, 95 S.Ct. 1448, 43 L.Ed.2d 763 (1975); *United States v. Gates*, 807 F.2d 1075, 1081–82 (D.C.Cir.1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 (1987). State convictions were not counted, even if they involved the same conduct prohibited under the federal statutes. *Id.*

---

**3.** Section 994(i) provides, in part:
(i) The Commission shall assure that the guidelines specify a sentence to a substantial term of imprisonment for categories of defendants in which the defendant—

(1) has a history of two or more prior Federal, State, or local felony convictions for offenses committed on different occasions.
28 U.S.C. § 994(i).

Moreover, and more importantly, that was Congress's own understanding of the provision. *See* S.Rep. No. 98–225, 98th Cong., 1st Sess. 258–59 (1983) (noting that under section 841 as then written, "enhanced sentencing is available only in the case of a prior *Federal* felony drug conviction") (emphasis added).[4]

The Third Circuit's approach in *Whyte* is thus doubtful. The courts' and Congress's view of the pre-amendment "punishable under" language indicates instead that the "offense described in" language refers only to the listed federal statutes, and no others.

### B.

The legislative history of section 994(h) does not support a contrary view. Section 994(h) was enacted to provide "a sentence at or near the statutory maximum for repeat violent offenders and repeat drug offenders." S.Rep. No. 98–225, 98th Cong., 1st Sess. 175 (1983). Congress intended to reserve this "top of the possible sentencing range only for the most egregious cases." S.Rep. No. 98–225, 98th Cong., 1st Sess. 114–15 (1983).

This objective—to impose severe punishment on the most serious repeat offenders—by no means compels the majority's interpretation of section 994(h). In fact, the majority's reading means that relatively minor state drug convictions can trigger career offender sentencing. In the present case, for example, Rivera's state conviction was for a street sale of 3.2 grams of heroin. The outcome would be the same if the conviction had been for selling a gram of marijuana. This kind of result cannot easily be squared with Congress's intent to punish only the most severe offenders. On the other hand, reading section 994(h)'s list of federal offenses as exclusive limits the severe consequences of career offender classification to federally-prosecuted, federally-convicted narcotics recidivists.

### C.

Finally, our case law does not provide support for today's holding. As the majority recognizes, this court's decision in *Sanchez–Lopez* does not speak to the question before us today. *See* Majority Op. at 996, (citing *United States v. Sanchez–Lopez,* 879 F.2d 541 (9th Cir.1989)). The issue in that case was whether the Guidelines' reference to state offenses was an "unconstitutional subdelegation of congressional authority to the various states." *Id.* at 560. The parties did not argue, and the court did not consider, whether by including state and unenumerated federal offenses the Guidelines exceeded their *statutory* authority.[5] Consequently, *Sanchez–Lopez* is not support for the majority's holding.

### III.

Especially without legislative history or case law supporting a different conclusion, the specific enumeration of offenses in section 994(h) should be conclusive. Moreover,

---

4. In the Comprehensive Crime Control Act of 1984, Congress changed this facet of section 841, removing the "punishable under" language and explicitly making enhanced sentences applicable to defendants with prior state and foreign drug convictions. Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, Title II, § 502, 98 Stat. 1976, 2068. The majority appears to view this change as evidence that the prior, "punishable under" language was meant to include state offenses. But the reverse is true. As already indicated, Congress itself understood the "punishable under" language to refer only to the listed offenses. That is why it removed that language in amending the statute to add state and foreign offenses.

Significantly, the amendment to 21 U.S.C. § 841 appeared in the same Act which created section 994(h). Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, Title II,

§ 217(a), 98 Stat. 1976, 2017–26. The fact that Congress inserted an explicit reference to state and foreign drug convictions in section 841, yet made no mention of such convictions while introducing the sentence enhancement provision of section 994(h), suggests strongly that Congress never meant to include state and foreign convictions in the provision not mentioning them.

5. In addition, the statement in *Sanchez–Lopez* that section 994(h) "delineated the types of individuals and conduct" subject to career offender sentencing does not,. as the majority argues, mean that the career offender statute was no more than a general description of the kinds of conduct relevant to enhancement. *See* Majority Op. at 996 (quoting *Sanchez–Lopez,* 879 F.2d at 560). The "types of individuals and conduct" intended are listed with specificity: the enumerated offenses, and no others.

to the extent there remains doubt on the question, the rule of lenity comes into play, requiring the statute be given a narrow construction. The Supreme Court has said that courts must not

> interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.

*Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980) (citations and internal quotation marks omitted). This rule applies whenever

> a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute.

*Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (emphasis in original) (quoting *Bifulco,* 447 U.S. at 387, 100 S.Ct. at 2252).

That is precisely the situation here. After considering "the language and structure, legislative history, and motivating policies" of section 994(h), we are left *at minimum* with a "reasonable doubt" about whether section 994(h) encompasses unenumerated offenses. *Bifulco* prohibits us from resolving this doubt in favor of dramatic increases in the sentences of a class of felons not mentioned in the statute. Rather, our obligation is to give the statute a reading that is at the very least equally plausible: that only the named predicate offenses were intended.

The majority sidesteps application of this important rule. It concedes that "[s]ection 994(h) of the statute is ambiguous." Majority Op. at 995. Under *Bifulco,* this concession should dispose of the issue. But the majority says its "task here is not to interpret the enabling statute; rather, we must determine whether the Guidelines ... are 'sufficiently reasonable' in light of the congressional directive to the Commission." *Id.* (citing *United States v. Nelson,* 919 F.2d 1381, 1382 (9th Cir.1990).

While the majority is quite correct that our duty is to determine whether the Guidelines are "sufficiently reasonable" in light of Congress's directives, *see id.,* I fail to see how we can discharge that duty without examining what those directives are. Here the majority has agreed that the directives are ambiguous. Majority Op. at 995. The rule of lenity requires resolving that ambiguity in favor of a narrow construction, one encompassing only the listed offenses. It follows that the Sentencing Commission's contrary interpretation, encompassing unenumerated state and federal offenses, is not "sufficiently reasonable."

The majority also argues that the rule of lenity may be dispensed with in interpreting section 994 because the section "is not a criminal statute in the sense that it proscribes certain conduct," but rather is a directive to the Sentencing Commission. Majority Op. at 997. But that should not matter. Section 994(h) is concededly ambiguous. Depending on how that ambiguity is resolved, the statute either does or does not require Rivera to spend an extra six years in jail. This is precisely the kind of situation which calls for the rule of lenity. It makes little sense to ignore the rule simply because section 994(h) does not itself prescribe criminal punishments. The punishments flow directly *from* section 994(h), whether or not they are contained *in* it.

Accordingly, the rule of lenity must guide our interpretation of section 994(h). Applied to the section, the rule makes clear—to the extent the text does not already do so—that the statute does not authorize the Guidelines' expansive list of predicate offenses.

In short, it is not enough to state that "it is not at all clear that Congress intended to *exclude* state convictions from the definition of 'prior felony conviction.'" Majority Op. at 996. An extra (and quite likely unintended) six years in prison should rest on more than a "guess as to what Congress intended." *Bifulco,* 447 U.S. at 387, 100 S.Ct. at 2252.

## IV.

This court has authority to conform an errant Guideline to its statutory mandate. *See United States v. Wills,* 881 F.2d 823, 826–27 (9th Cir.1989) (correcting a Guideline requiring judges to impose consecutive sen-

tences, where a statute had authorized either consecutive or concurrent sentences). *Cf. United States v. Nottingham,* 898 F.2d 390, 393–95 (3rd Cir.1990) ("[t]o the extent that the enabling legislation contains specific direction, the guidelines must comport with that direction") (citing 28 U.S.C. § 994(a)).

Because Sentencing Guideline 4B1.2(2) exceeds its statutory authority, I would remand this case for resentencing consistent with the directives of 28 U.S.C. § 994(h).